UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT W. DIEHL, JR., and
MELANIE L. DIEHL,

      Plaintiffs,

v.

SWN PRODUCTION COMPANY, LLC,

      Defendant.

: CIVIL ACTION NO. 3:19-CV-1303
: (JUDGE MARIANI)

## MEMORANDUM OPINION
### I. INTRODUCTION

Here the Court considers Defendant SWN Production Company, LLC's Motion to Dismiss Counts IV and VI of Plaintiffs' Second Amended Complaint. (Doc. 22.) The above-captioned matter is a diversity action brought by Robert W. Diehl, Jr., and Melanie Diehl ("Plaintiffs") against SWN Production Company, LLC ("SWN" "SPC" "Defendant") regarding an oil and gas lease between the parties. Plaintiffs filed the Second Amended Complaint pursuant to the Court's Memorandum Opinion and Order of April 3, 2020, which addressed Defendant SWN Production Company, LLC's Motion to Dismiss the Amended Complaint (Doc. 9). (Docs. 20, 21.) The Court denied Defendant's motion as to all counts except Count IV, Plaintiffs' claim for Breach of Contract – Implied Covenant to Develop Hydrocarbons. (Doc. 20 ¶¶ 2, 3.) Count IV was dismissed without prejudice, and the Court allowed Plaintiffs fourteen days to file an amended complaint. (*Id.* ¶¶ 4, 5.)

As set out in the Second Amended Complaint (Doc. 21), Plaintiffs assert three counts based on "Breach of Contract – Implied Covenant to Market Hydrocarbons" (Counts I-III), a count for "Breach of Contract – Implied Covenant to Develop Hydrocarbons" (Count IV), a count for "Declaratory Relief" (Count V), and a count for "Quiet Title" (Count VI). (Doc. 21 at 7-27.)  The pending Motion seeks dismissal of Plaintiffs' amended Count IV and, based on the assertion that amended Court IV seeks money damages only, Plaintiffs' claim for quiet title, Count VI.  (Doc. 22 ¶¶ 17-19.)  For the reasons that follow, the Court will grant Defendant's Motion in part and deny it in part.

## II. BACKGROUND

Plaintiffs own approximately 160.94 acres in Oakland Township, Susquehanna County, Pennsylvania ("Subject Property") which was leased to Cabot Oil & Gas Corporation ("Cabot") on October 25, 2007.  (Doc. 21 ¶¶ 3-4.)  The Lease was assigned from Cabot to Southwestern Energy Production Company ("Southwestern") on November 17, 2011.  (*Id.* ¶ 6.)  Southwestern converted to SWN and is the sole lessee and working interest holder in the Lease.  (*Id.* ¶¶ 8-9.)

The Lease had a primary term of five years, with an option to extend for five additional years by paying $100.00 per acre, and remains in force "as long thereafter as oil or gas is produced, or considered produced under the terms of this lease, in paying quantities from the premises or from land pooled therewith[.]"[1]  (Doc. 21-1, Am. Compl., Ex.

---

[1] This is known as the "habendum clause" of a lease which, in this case, states:

2

A, ¶¶ 2, 13.) Should production occur, SPC must pay Plaintiffs royalties based on the "amount realized from the sale of the gas at the well," and SPC is expressly permitted to deduct post-production expenses incurred downstream from the wellhead.[2] (*Id.* ¶ 3.) In addition to actual production, oil or gas is "considered produced" if the lessee pays a "shut-in royalty" of $1.00/acre/year. (*Id.* ¶ 4.) Further, should lessee fail to make a required payment, the Lease does not terminate; the lessor simply is entitled to a "correcting payment or tender with interest at the rate of eight (8%) annum[.]" (*Id.*)

---

> This lease shall remain in force for a term of fine (5) years from this date (called "primary term") and as long thereafter as oil or gas is produced, or considered produced under the terms of the lease, in paying quantities from the premises or from lands pooled therewith or the premises are used for storage purposes as provided in paragraph 6 hereof, or this lease is maintained in force under any subsequent provisions hereof.

(Doc. 8-1 ¶ 2.)

[2] The royalty clause reads as follows:

> Lessee shall deliver to the credit of Lessor, free of cost, into Lessor's tanks on the premises or in the pipeline thereon which Lessor may designate, the equal one-eighth (1/8) part of all oil or liquid hydrocarbons produced and saved from the premises, and shall pay the Lessor on gas, including casinghead gas or other gaseous substances, produced and sold from the premises one-eighth (1/8) of the amount realized from the sale of gas at the well (meaning the amount realized less all costs of gathering, transportation, compression, fuel, line loss and other post-production expenses incurred downstream of the wellhead). Payment for royalties in accordance herewith shall constitute full compensation for the gas and all of its components. No royalty shall be due on stored gas produced from the premises or on gas produced from a storage formation or formations hereunder.

(Doc. 8-1 ¶ 3.)

3

On September 11, 2012, Southwestern exercised its option to extend the Lease. (Doc. 21 ¶ 7.) Accordingly, the Lease's primary term ended on October 25, 2017. (Doc. 21-3.) Portions of the Subject Property were placed into the Walker Diehl North Gas Unit and the Walker Diehl South Gas Unit (collectively, the "Units"). (Docs. 21-4, 21-5.) The Units encompass 1,376.097 acres and each unit has one operational well producing natural gas from the Marcellus Shale formation. (Doc. 21 ¶¶ 13-15.)

### III. STANDARD OF REVIEW

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations, alterations, and quotations marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Labs.*, 707 F.3d 223, 231 n.14 (3d Cir. 2013) (internal citation, alteration, and quotation marks omitted). Thus, "the presumption of truth attaches only to those allegations for which there is sufficient 'factual matter' to render them 'plausible on [their] face.'" *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.*

"Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer possibility that a defendant has acted unlawfully.'" *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal citation omitted) (first quoting *Twombly*, 550 U.S. at 556; then quoting *Iqbal*, 556 U.S. at 678). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* at 786-87 (quoting *Iqbal*, 556 U.S. 679).

The Third Circuit Court of Appeals has identified the following three-step inquiry as appropriate to determine the sufficiency of a complaint pursuant to *Twombly* and *Iqbal*:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir.2011); see also *Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013); *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir.2010).

Even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## IV. ANALYSIS

Defendant asserts that "[w]hile Plaintiffs have attempted to replead a failure to develop claim, they did not plead fraud or a viable claim under Pennsylvania law." (Doc. 23 at 1.) Plaintiffs respond that Count IV pleads a viable claim for breach of the implied covenant to reasonably develop hydrocarbons. (Doc. 24 at 1.) The parties also have divergent positions on whether Count VI of the Second Amended Complaint should be dismissed. (Doc. 23 at 1-2; Doc. 24 Doc. 1-2.) For the reasons that follow, the Court concludes that dismissal of Count IV is appropriate and Count VI should go forward.

### A. Implied Covenant to Develop

Defendant asserts that Plaintiffs' implied duty to develop claim in Count IV of the Second Amended Complaint fails because the Lease's terms preclude the application of the

6

duty and Plaintiffs have not alleged any facts supporting fraud. (Doc. 23 at 9.) Plaintiffs respond that they are entitled to proceed on their claim for a breach of the implied covenant to reasonably develop hydrocarbons because their payments under the Lease are entirely based on hydrocarbon production and Pennsylvania law does not require them to allege fraud. (Doc. 24 at 9.)

As a federal court sitting in diversity, this Court is required to apply the substantive law of the state whose law governs the action. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, (1938). The parties agree that Pennsylvania law governs this dispute.

In the April 3, 2020, Memorandum Opinion, this Court reviewed Pennsylvania law on the issue presented in Count IV. After careful consideration of relevant caselaw, including *Jacobs v. CNG Transmission Corp.,* 772 A.2d 445 (Pa. 2001), *Caldwell v. Kriebel Resources Co.,* 72 A.3d 611, 613 (Pa. Super. Ct. 2013), *Norm's Ltd. v. Atlas Noble, LLC,* No. 1377 WDA 2014, 2015 WL 7112968 (Pa. Super. Ct. May 8, 2015),[3] this Court concluded that

> [t]he review of Pennsylvania Superior Court decisions indicates that the Superior Court has consistently concluded that an implied duty to develop was not applicable or was not breached when the lessor was not holding the property without developing it—where development had commenced it was the express terms of the lease that controlled. This was true when the lease contained a provision like that in Plaintiffs' lease regarding implied covenants. *See Seneca,* 122 A.3d at 385 n.11. Notably, the plaintiffs in *Norm's* and *Caldwell* appealed the Superior Court's decisions to the Pennsylvania

---

[3] As noted in the previous Memorandum Opinion (Doc. 10 at 22), despite the fact that *Norm's* is a non-precedential decision and of no authoritative value, this Court is free to consider the decision as a non-precedential Superior Court opinion.

> Supreme Court and the Court denied review. *Norm's*, 129 A.3d 1243 (Pa. 2015) (noting reconsideration denied February 5, 2016, *id.* at n.44; *Caldwell*, 81 A.3d 74 (Pa. 2013).

(Doc. 19 at 26-27.)

This Court then determined that, although Plaintiffs disputed reliance on the cited authority,[4] they did not cite to contrary authority and the distinctions identified did not legally distinguish the Pennsylvania cases reviewed by this Court. (*Id.* at 29.)

> [T]he distinctions identified fail to legally distinguish the cases in that the decisions in favor of the lessees in *Caldwell*, *Norm's*, and *Seneca* were based on the fact that the leases provided payment alternatives in lieu of development and, once production had commenced under the terms of the lease, the lessee[s] were not "holding the properly without developing it, which would not be in compliance with the dictates of *Jacobs*." *Caldwell*, 72 A.3d at 616. In other words, during the production phase of operations, absent express development terms in the lease, the terms of the habendum clause represent the only bargain of the parties and no implied duty to develop reasonably can be imposed upon the lessee thereafter. As stated in *Aye v. Philadelphia Co.*, 44 A. 555, "where the parties have agreed on what shall be done, there is no room for the implication of anything not so stipulated for." *Id.* at 456.
>
> Here the lease does not contain express terms related to the number of wells to be drilled or other specific aspects of development, but the parties agreed upon "what shall be done" in terms of the development needed to hold

---

[4] This Court summarized Plaintiffs' argument as follows:

Plaintiffs assert that the lessor in *Caldwell* argued that the lessee had to develop every strata of gas to satisfy the implied duty to develop, a broad claim which Plaintiffs do not make. (Doc. 13 at 16.) Plaintiffs distinguish *Seneca* on the basis that the lease explicitly provided for delay rentals to hold unoperated acreage and that unoperated acreage could be converted to operated acreage at any time thus they expressly bargained for payments in lieu or rentals which the parties here did not. (Doc. 13 at 15.) Plaintiffs distinguish *Norm's* on the basis that the court found that the delay rental could be paid indefinitely which is not the case here. (Doc. 13 at 16.)

(Doc. 19 at 28.)

> the lease in the habendum clause. As to production, one well can satisfy the habendum clause provision that the Lease will remain in force based on the production of oil or gas in paying quantities. (Doc. 8-1 ¶ 2.) Because Defendant is producing gas from two wells, it is not holding the property without developing it under *Jacobs* and the Superior Court cases. As in the Superior Court cases, Plaintiffs were entitled to alternative compensation in the event that drilling did not commence, including delay rental payments. (*See* Doc. 8-1 ¶ 13.) Though Plaintiffs were not receiving any alternate payments because the production phase had begun, that fact does not distinguish this case in that alternate payments were not being made for unused portions of land at the time the Superior Court decided *Caldwell*, *Norm's*, and *Seneca*—it was the fact that the leases had provided for alternative compensation before, or in lieu of, development that mattered. In *Jacobs'* terms, Defendant is not "hold[ing] the premises and refus[ing] to operate them." 772 A.2d at 455. Thus, based on Pennsylvania Superior Court precedent grounded in the Pennsylvania Supreme Court's decision in *Jacobs*, the Court concludes that Plaintiffs have not stated a plausible claim for relief in Count IV that the implied duty to develop requires further natural gas development of their property by Defendant.

(Doc. 19 at 29-30.)

Following the determination that relevant Pennsylvania caselaw indicated that Plaintiffs had not stated a plausible claim that the implied duty to develop required Defendant to dig more wells on the relevant property, this Court then addressed Defendant's alternative argument that Plaintiffs had "not alleged that Defendant was not acting in good faith on its business judgment relative to the property." (*Id.* at 30-31 (citing Doc. 11 at 17 (citing *Young v. Forest Oil Co.*, 45 A. 121 (Pa. 1899); *Colgan v. Forest Oil Co.*, 45 A. 119 (Pa. 1899); *Adams v. Stage*, 18 Pa. Super. 308 (Pa. Super. 1901)).) This Court engaged in this analysis "[i]nsofar as the distinctions between the circumstances presented here and those at issue in *Caldwell*, *Norm's*, and *Seneca* could be considered

9

indicative of a different result such that an implied duty to develop may apply in this case."[5]

(Doc. 19 at 30.) This Court relied on *Colgan* to conclude that Plaintiffs had not pled a plausible claim that Defendant was not acting in good faith, finding that the Pennsylvania Supreme Court case

> provides perspective on court intervention in disputes regarding oil and gas leases once production has commenced. *Colgan* involved an action in equity where the defendant contracted to put down one well on the plaintiff's land and had, in fact, put down five, but the plaintiff charged that the five were put down on the eastern half of the property to the neglect of the western half. *Id.* at 119. The Court recognized that the lessor was seeking relief under "covenants [that] are merely implied," *id.* at 119, but did not specifically discuss the issue in terms of an implied duty to develop and *Jacobs* did not cite the case. Nonetheless, in that *Colgan* remains good law, *see, e.g., T.W. Phillips Gas and Oil Co. v. Jedlicka*, 42 A.3d 261, 270 (Pa. 2012), the Court will consider its application to the case at bar.
>
> The Pennsylvania Supreme Court disagreed with the lower court that the western half of the farm would furnish at least one paying well and the lower court's decree that a well should be put down there by the lessee. 45 A. at 121. The Court considered evidence which had been proffered by the lessor which was only that wells had been drilled on adjoining farms and the lessor's testimony that he thought he could get others to take the land. *Id.* The Court found that this was
>
>> far short of what is required. So long as the lessee is acting in good faith on business judgment, he is not bound to take any other party's, but may stand on his own. Every man who invests his money and labor in a business does it on the confidence he has in being able to conduct it in his own way. No court has any power to impose a different judgment on him, however erroneous it may deem his to be. Its right to interfere does not

---

[5] This Court noted that "[t]he Superior Court cases did not address the issue of the lessee's good faith development of the property in the context presented here. *Caldwell* considered a good faith standard as to an "implied duty to develop in paying quantities," and rejected the lessors' argument. 72 A.3d at 616." (Doc. 19 at 31 n.7.)

> arise until it has been shown clearly that he is not acting in good faith on his business judgment, but fraudulently, with intent to obtain a dishonest advantage over the other party to the contract. Nor is the lessee bound, in case of difference of judgment, to surrender his lease, even pro tanto, and allow the lessor to experiment. Lessees who have bound themselves by covenants to develop a tract, and have entered and produced oil, have a vested estate in the land, which cannot be taken away on any mere difference of judgment. It is not within the jurisdiction of any court to oust the owner and forfeit the title to estates in that way, and the jurisdiction of equity to decree any specific act or declare forfeiture depends on fraud averred and fully proved. Experimental drilling of other wells on the western portion of this tract may work injury to defendant's wells already down, without any corresponding advantage to the plaintiff. The weight of the evidence is that such would be the probable result, but, whether it would or not, the defendant is not bound to submit to the experiment. It has an estate in the whole tract, has fully performed its agreement in relation thereto, and not a single fact has been shown to authorize the court to interfere with its title or possession.
>
> [45 A.] at 121.

(Doc. 19 at 31-32.)

In response to Defendant's argument that Plaintiffs did not allege that Defendant was not acting in good faith on its business judgment relative to the property (Doc. 11 at 17), Plaintiffs argued that Count IV should go forward because they alleged in their Amended Complaint that Defendant "failed to develop the hydrocarbons 'in a reasonable and good faith manner.'" (Doc. 13 at 22-23 (quoting Doc. 8 ¶¶ 43, 60, 87)). This Court concluded that, although Plaintiffs had stated in Count IV of the Amended Complaint that "SWN has had ample time to drill any additional wells to fully develop the Marcellus formation in each of the

11

Walker Diehl North Gas Unit and the Walker Diehl South Gas Units in a reasonable and good faith manner and has failed to do so" (Doc. 8 ¶ 87),

> more is required to state a plausible claim for relief when the established good faith standard related to the matter at issue must be grounded 'on fraud averred.'" (Doc. 19 at 33 (citing *Colgan*, 45 A. at 121).) Plaintiffs conclusory assertion that Defendant's failed to develop the hydrocarbons in a "reasonable and good faith manner" (Doc. 8 ¶ 87) cannot sustain a claim under *Colgan*. Because fraud is not averred in Plaintiffs' Amended Complaint, Count IV cannot go forward on Plaintiffs' claim as pled.
>
> Though the facts alleged by Plaintiffs do not suggest fraudulent behavior, the Court cannot say for certain that granting leave to amend would be futile. Therefore, under Third Circuit precedent, the Court will allow Plaintiffs to file an amended complaint as to Count IV. *Phillips*, 515 F.3d at 245. In so doing, Plaintiffs are reminded that, under the Federal Rules of Civil Procedure, in alleging a claim for fraud, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

(Doc. 19 at 33-34.)

In response to Defendant's pending Motion, Plaintiffs maintain that they plead a viable claim of the implied covenant to develop hydrocarbons because *Seneca*, *Norm's*, and *Caldwell* "are distinguishable, and the logic of these decisions, derived from *Jacobs*, does not apply here." (Doc. 24 at 7.) Plaintiffs also assert that this Court was wrong to conclude that they had to allege fraudulent conduct if they chose to amend Count IV of their Amended Complaint, arguing in part that "it is respectfully submitted that a claim for a breach of the implied covenant to develop hydrocarbons does not require fraudulent conduct to be pleaded or proven." (*See* Doc. 24 at 9.)

12

This Court concludes that neither argument warrants extensive analysis. First, as set out above, this Court rejected Plaintiffs' argument that *Seneca*, *Norm's*, and *Caldwell* are distinguishable for reasons set out in the April 3, 2020, Memorandum Opinion. *See supra* pp. 8-9. Plaintiffs did not seek reconsideration of that Opinion and they do not properly do so here.

> The doctrine of the law of the case limits relitigation of an issue once it has been decided.... [T]his doctrine is concerned with the extent to which the law applied in decisions at various stages of the same litigation becomes the governing legal precept in later stages. 18 James Wm. Moore Et Al., Moore's Federal Practice ¶ 134.20 (3d ed.1999). The Court has defined the law of the case as a precept that " 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.' This rule of practice promotes the finality and efficiency of the judicial process by 'protecting against the agitation of settled issues.' " *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (citing *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983), and citing 1B James Wm. Moore Et Al., Moore's Federal Practice ¶ 0.404[1], p. 118 (1984)).

*In re Cont'l Airlines, Inc.*, 279 F.3d 226, 232-33 (3d Cir. 2002).

It is well-established that the law of the case doctrine "does not restrict a court's power but rather governs its exercise of discretion." *In re City of Philadelphia Litig.*, 158 F.3d 711, 718 (3d Cir. 1998) (citing *Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir. 1997)). Accordingly, the doctrine does not preclude reconsideration of previously decided issues in extraordinary circumstances such as where: "(1) new evidence is available; (2) a supervening new law has been

announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice." *Id.* at 718 (citation omitted).

Plaintiffs present no extraordinary circumstances here. In their attempt to distinguish the cases upon which this Court relied, they essentially repeat the arguments previously presented and rejected by this Court regarding *Seneca*, *Norm's*, and *Caldwell*. (*Compare* Doc. 24 at 7-9 *with* Doc. 13 at 10-11.) Plaintiffs do not cite any intervening change in Pennsylvania law or recent clarification of the cases cited that would provide a basis to revisit the issue previously decided.

Second, as to this Court's determination that Plaintiffs needed to aver fraud in connection with Court IV, Plaintiffs' assertion that "a claim for a breach of the implied covenant to develop hydrocarbons does not require fraudulent conduct to be pleaded or proven" (Doc. 24 at 9) misapprehends this Court's consideration of the issue and determination of the requisite pleading standard. This Court relied on *Colgan* in the context of addressing

> Defendant's alternative argument that Plaintiffs have not alleged that Defendant was not acting in good faith on its business judgment relative to the property[,] the contention that whether additional wells should be drilled and, if so, when and where is left to the business judgment of the lessee[,] and the lessor must show that the lessee was not acting in good faith on his business judgment.

(Doc. 19 at 30-31 (internal citations and quotations omitted).)

Plaintiffs acknowledge that *Colgan*, *Young*, and *Adams* "speak to fraudulent conduct," but "this was a figure of speech rather that a statement that legal fraud is a

required element of a reasonable development claim." (Doc. 24 at 9.) This Court did not consider whether "legal fraud" was an element of a reasonable development claim. Rather, this Court merely stated that, under Federal Rule of Civil Procedure 9(b) "a party must state with particularity the circumstances constituting fraud or mistake." (Doc. 19 at 34.) In claims for failure to develop, *Colgan* required "fraud averred," 45 A. at 121, and *Young* required "actual fraud," 45 A. at 121. The Pennsylvania Supreme Court used the word "fraudulent" in relation to the lessee's failure to drill on certain parts of the leasehold. 45 A. at 122. Plaintiffs contend that "[t]he court was obviously using the term 'fraudulent' to address business decisions made by the defendant that are not aboveboard and took advantage of the lessor. That is a figure of speech and not legal fraud." (Doc. 24 at 13.) Plaintiffs' assessment does not take Rule 9(b) out of play: Pennsylvania law requires them to aver fraud and federal pleading rules require fraud to be alleged with particularity. Because Plaintiffs have not done so, Count IV of their Second Amended Complaint is properly dismissed.

## B. Count VI

In support of the claim that Count VI should be dismissed, Defendant asserts that

> [i]n their Second Amended Complaint, Plaintiffs pleaded, for the first time, that they are not seeking termination of the Lease based on any alleged breach of the implied duty to develop. See 2d Am.Compl., ¶ 78. As result, based on the pleadings, there are only two ways the lease could have terminated: (1) breach of the implied duty to market or (2) failure of both wells to produce in paying quantities. But neither is successful here because (1) a breach of the implied duty to develop does not result in lease termination and (2) the pleadings demonstrate both wells at issue are producing in paying quantities.

(Doc. 23 at 14.) Plaintiffs respond that this Court "has already rejected SPC's challenge to the Diehls' Quiet Title claim in Count VI, so the present Motion must be denied based on Federal Rule of Civil Procedure 12(g)(2), the 'law of the case' doctrine and the substantive facts pleaded in the Second Amended Complaint." (Doc. 24 at 16.) The Court concludes that Count VI properly goes forward.

Rule 12(g)(2) states that "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Here, Defendant raises arguments that could have been raised in its previous motion to dismiss and were not. In the April 3, 2020, Memorandum Opinion, this Court concluded that "Defendant' argument for dismissal of Count VI is the presumed dismissal of the breach of covenant claims. Because Counts I, II, and III go forward, Defendant has articulated no basis upon which to dismiss Count[] . . . VI as is its burden at this stage of the pleadings." (Doc. 19 at 34.) Defendant does not present any cogent analysis as to why it could not have raised the arguments regarding the duty to market or the failure of both wells to produce in paying quantities in its previous motion. Therefore, this Court will not entertain those arguments here.

## V. CONCLUSION

For the foregoing reasons, Defendant SWN Production Company, LLC's Motion to Dismiss Counts IV and VI of Plaintiffs' Second Amended Complaint (Doc. 22) will be

granted in part and denied in part. The Motion will be granted as to Count IV and denied as to Count VI. A separate Order will be filed with this Memorandum Opinion.

Robert D. Mariani
United States District Judge